TERRITORY *v*. SALAZAR.

Filed January 17, 1885.

1. CRIMINAL LAW—MURDER—EVIDENCE—QUESTION FOR THE COURT.

   It is a question of law for the court to say, upon the evidence, whether the time which elapsed between the provocation in any given case and the stroke was sufficient for the heat of passion to subside.

2. SAME—DEGREE OF CRIME—HARMLESS ERROR.

   Where the evidence justifies a verdict of murder in the first degree, an instruction as to murder in the second degree, if erroneous at all, is harmless error.

Appeal from First judicial district court, Rio Arriba county.

BELL, J.   The defendant was indicted at the May term, 1884, for the killing of Jose Martin.   The case was tried at that term, and he was convicted of murder in the second degree.   A motion for a new trial was denied, and defendant was sentenced to imprisonment for life, from which sentence appeal was taken to this court.   The errors assigned are as follows:   *First*, the refusal of the court to give the tenth instruction asked by defendant; *second*, the giving by the court of any instruction as to murder in the second degree; *third*, the said instruction as to murder in the second degree is misleading, and does not correctly state the law.

The tenth instruction asked for by defendant is as follows:

"If the jury believe from the evidence that defendant, in the heat of passion, went out from the store or saloon where deceased was killed, and went a distance of one hundred or one hundred and fifty yards, and returned, running as fast as he could, both going and returning, the court instructs the jury that there may not have been sufficient time for defendant's anger to cool, and it is for the jury to say whether there was sufficient time."

This leads us to consider the whole evidence in the case, and to what degree or degrees of crime it pointed.   It was undoubtedly the duty of the court to instruct the jury as to all the law applicable to the evidence in the case, and it is error for the judge, unless there be an entire absence of evidence to prove a particular grade of crime, to exclude such grade from the consideration of the jury.   *Territory v. Nichols*, 2 PAC. REP. 78,[1] and cases cited.   On the other hand, the court is not required to instruct the jury as to any degree of crime which is not supported by the evidence.

In the case at bar the evidence shows that on the morning of the eleventh day of November, 1883, the defendant, with a number of other men, among whom was the deceased, were together at the store or saloon of Santiago Candelaria, drinking and gambling; that the deceased and the defendant had a quarrel, and that the defendant drew a pistol from his pocket, evidently with the design to use it against the deceased.   Some of the other persons, however, who were present, seized the pistol in his hand and took it from him; then the defendant took up his money from the table, and turning to the proprietor asked him how much he owed him; that the proprietor told him $21; defendant said he would go and get it; that he then left

_____

[1] Same case, *ante*, 76,  and cases cited.

the saloon and went to the house of Manuel Salazar, which was a hundred or a hundred and fifty yards distant, got another pistol which he had there, returned to the saloon where he had left the deceased, and immediately shot him. There is little or no conflict in the evidence of the witnesses. The defendant himself testified substantially in accordance with the above statement. There is some difference in the testimony as to the distance of the house to which the defendant went to get his pistol. None of the witnesses described the distance as less than a hundred yards, and some of them testified that it was a hundred and fifty yards. There was also some difference among the witnesses as to the duration of his absence, but all agree with the prisoner himself that he went a distance of a hundred or a hundred and fifty yards, got the pistol, returned, and shot the deceased. The evidence of at least one of the witnesses shows that when the defendant returned, he addressed the deceased and said to him, "You are the one that called me a s—— of a b——," and then shot him. It does not appear that he said anything about the money which he owed Candelaria, and which, when he went out, he said he was going to bring. Upon this evidence we are of opinion that the defendant was not entitled to the instruction asked for, and which we are now considering. That instruction is based upon the theory that the defendant was entitled upon the evidence to have the jury instructed as to the offense of murder in the fourth degree.

We do not think that the evidence in this case required the court to submit to the jury the fourth degree of murder. It is very evident that the killing of the deceased was intentional and premeditated. The attempt to draw a pistol upon the deceased in the saloon, the immediate announcement of his intention to go and bring the money due to Candelaria, the amount of which he inquired about after the first pistol had been taken away from him, his going then to a house 100 or 150 yards distant, securing another pistol, returning to the saloon, saying nothing about the money which he had said that he was going to bring, but instead thereof shooting the deceased, all tend to show that the killing was a willful and premeditated murder. The judge rightfully refused the instruction under consideration. It is a question of law for the court to say, upon the evidence, whether the time which elapsed between the provocation in any given case and the stroke, was sufficient for the heat of passion to subside. Upon this subject Greenleaf gives us the rule as follows:

"If, therefore, after the provocation, however great it may have been, there was time for passion to subside, and for reason to resume her empire, before the mortal blow was struck, the homicide will be murder. And whether the time which elapsed between the provocation and the stroke was sufficient for that purpose, is a question of law to be decided by the court." 3 Greenl. § 125.

The second assignment of error, namely, "the giving by the court of any instruction as to murder in the second degree," was not, in our

judgment, such error, if error at all, as would entitle the defendant to a reversal, upon the evidence as presented by the record.    We are of opinion that the court might properly have left the case to the jury as one simply of murder in the first degree, for the reasons that we have stated in considering the first assignment of error.   That being the case, the giving to the jury an instruction as to murder in the second degree was more favorable to the defendant than the evidence in the case warranted.   It was, therefore, if error at all, such error as was not prejudicial to him, and of which, consequently, he has no right to complain.   The rule is that "one cannot object to an instruction which has done him no harm, as, for example, that it is too favorable to him."    1 Bish. Crim. Proc. § 980.

In a case in California in which this question was considered, and in which the court below had instructed the jury as follows:

"If the jury believes from the evidence that both defendants entered into a conspiracy to feloniously shoot and kill Ah Sam, the deceased, and that they both feloniously shot at him in pursuance of such agreement and that the deceased died of the wounds so inflicted by one or both of the defendants, the jury will find them guilty of murder in the second degree;"

—the court said:

"The defendants object to this instruction on the ground that, upon the facts which it assumes, the jury should have been instructed to convict the defendants in the first degree instead of the second degree.   The obvious answer to the objection is that, if the instruction was more favorable to the defendants than it should have been, they could not have been damaged by it." *People* v. *Ah Kong*, 49 Cal. 6; *State* v. *Murray*, 5 Pac. Rep. 55.

In that case, as in the case under consideration, the defendant was indicted for murder in the first degree, and all the evidence pointed clearly to a willful and deliberate killing.   The court, however, gave to the jury the case as one of murder in the first degree, and also one of murder in the second degree.   The jury convicted one of the defendants of murder in the second degree, and the other defendant of manslaughter.   An appeal was taken, and the principal question presented was the alleged error of the court in giving the instruction as above quoted.   The court there very properly took the view that, whether the instruction was or was not in form erroneous, the defendants could not complain of it, as it was more favorable to them than the evidence warranted.   In this case, as we have already stated, we do not think that the defendant was entitled to have his case presented to the jury as one of murder in the second degree, as that was more favorable to him than the facts justified.   It was, therefore, not error, if error it was, of which he had a right to complain.    The consideration which we have given to the first and second assignments of error disposes of the third.   The judgment should be affirmed; and it is so ordered.

Wilson, J., concurs.