(February 27, 1888.)

## TERRITORY v. EVANS.

### [17 Pac. 139.]

Indictment for Murder, if it Sufficiently Describes Crime, will be Sustained.—In determining the offense charged in an indictment, all parts of the instrument will be considered together, and if from the whole it appears that a crime is sufficiently alleged, it will be sustained.

Instructions Requested.—In criminal prosecutions, as in other actions, instructions to the jury must be based upon some evidence in the case. If they do not, when requested, they should be refused.

Same—If Given for Murder in First Degree, will Sustain Verdict for Second Degree.—An instruction to the jury, upon which defendant is convicted of murder in the second degree, though objectionable as defining murder in the first degree, is sufficient to sustain the verdict as found.

Reviewing Instruction—Whole Charge to Jury will be Considered.—In reviewing alleged errors on appeal from a judgment in a criminal case, where objection is made to specific instructions, the entire charge will be considered together, and if it fairly and correctly presents the law bearing upon the issues tried, the appellate court will not disturb the judgment.

Presumptions.—Presumptions are in favor of the decision of the court, and where a reversal of a judgment is sought on the ground of error, the ruling of the court will be sustained unless sufficient facts appear in the record to show that error was committed.

(Syllabus by the court.)

APPEAL from District Court, Lemhi County.

Charles A. Wood, for Appellant.

When a known felony is attempted upon the person, be it to rob or kill, the party assaulted may repel force by force, and any person present may interpose to prevent mischief, and if death ensues, the party so interfering will be justified. In such cases nature and social duty co-operate. (*Commonwealth v. Selfridge,* Horr. & Thomp. 30; 1 Bishop's Criminal Law, sec. 851; *Pond v. People,* Horr. & Thomp. sec. 814; *Dill v. State,* Horr. & Thomp. sec. 738; Crimes and Punishment Act,

secs. 25, 30.) It is not necessary that the danger should be actual; simply apparent. (1 Bishop's Criminal Law, 305, and notes; Archibald's Criminal Law, 221; 1 Wharton's Criminal Law, 405, 488, 489; Crimes and Punishment Act, sec. 26; *Maher v. People,* Horr. & Thomp. 290.) Whatever a man may lawfully do in defending himself he may lawfully do in defending another. (*State v. Westfall,* 3 Am. Cr. Rep. 343.)

R. Z. Johnson, Attorney General, and James H. Hawley, for the Territory.

· No person, even if an officer, is justified in taking life, unless the absolute necessity exists. No person can lawfully take life to prevent the commission of a misdemeanor, or to effect the capture or prevent the escape of one who has committed a misdemeanor. (2 Bishop's Criminal Law, 630 et seq.; 2 Wharton's Criminal Law, 1031.) If a person interferes in an affray with a view to keep the peace, and not to take any particular one's part, he may, if absolutely necessary, kill, in order to preserve his own life or that of a party thereto; but if he runs in, and takes the part of one party to the affray, it will be manslaughter. (1 Russell on Crimes, 898; 2 Wharton's Criminal Law, 1039; 1 East P. C. 291; 1 Hawkins' Pleas of the Crown, 98.) And if he interferes, and kills with malice, it will be murder. (Wharton on Homicide, 444.) Mere threats or abusive language will not justify an interference, nor, in case of death, will they reduce the crime from murder to manslaughter. (*Johnson v. State,* 27 Tex. 758; *Stoffer v. State,* Horr. & Thomp. 232.) If a defendant justifies on the ground that the act was necessarily committed in lawfully preserving the peace, as where he interferes to prevent A from taking the life of B, and to that end kills A, he must show, to establish a defense, not that he had reasonable ground to believe that the act was necessary, but that it was actually necessary, and that he had no other way to prevent the execution of the felony. (*People v. Cole,* 4 Park. Cr. Rep. 35.) Where the evidence shows the accused was not forced to take the life of deceased to save his own life or limb from serious peril, an instruction which ignores the excuse of self-defense is not erroneous. (*Taylor v. State.* 48 Ala. 180.) When there

is no evidence of justification of a homicide, it is not error to tell the jury that the law of justification is not applicable. (*Parker v. State,* 31 Tex. 132.)

BUCK, J.—The defendant was indicted, tried and convicted of murder in the second degree, at the April term, 1888, of the district court, third judicial district, in the county of Lemhi, and comes into this court on an appeal from the judgment.

The first point made by appellant in his brief is that the indictment does not allege the crime of murder. The charging part of the indictment is as follows: "That the said Charles Evans, on the eleventh day of November, A. D. 1886, did unlawfully, willfully, deliberately, premeditatedly, feloniously, and of his malice aforethought, in and upon one James McKee, make an assault, and that the said Charles Evans a certain pistol then and there loaded with powder and leaden bullets, which said pistol he, the said Charles Evans, in his hands then and there had and held at and against the said James McKee, then and there unlawfully, willfully, deliberately, premeditatedly, feloniously, and of his malice aforethought, did shoot off and discharge, and that the said Charles Evans, with the leaden bullets aforesaid, by means of shooting off and discharging the said pistol so loaded, to, at, and against the said James McKee, as aforesaid, did then and there unlawfully, willfully, deliberately, premeditatedly, feloniously, and of his malice aforethought, strike, penetrate, and wound the said James McKee, giving him, the said James McKee, as aforesaid, one mortal wound, of which mortal wound the said James McKee did die. And so the jurors aforesaid, upon their oaths aforesaid, do charge and say that the said Charles Evans the said James McKee, in manner and form aforesaid, then and there, unlawfully, willfully, deliberately, premeditatedly, feloniously, and of his malice aforethought did·kill and murder," etc. The felonious and malicious intent herein charged in terms qualifies and characterizes the striking, penetrating, and wounding of the deceased, McKee, and does not in terms charge that the wound was intentionally and feloniously mortal.

The appellant, in his brief, urges the proposition that "under our statute there must be an intention to kill, or the crime

will not be murder." Under our Penal Code, as it existed in April, 1887, the time when the indictment was found (Revised Laws, 323, sec. 15), murder was the unlawful killing of a human being with malice aforethought, either express or implied. Section 21 of the same statute, page 324, provides also: "That involuntary manslaughter shall consist in the killing of a human being without any intent to do so," etc, "provided, that when such involuntary killing shall happen in the commission of an unlawful act which, in its consequences, naturally tends to destroy the life of a human being, or is committed in the prosecution of a felonious intent, the offense shall be deemed and adjudged to be murder." The indictment in the case at bar charges the wounding, striking, and penetrating of James McKee with leaden bullets, and with malice aforethought, of which wound the said McKee died. The wounding is charged to be with felonious intent, and, if so, the killing, under the statute referred to, is murder, even without the intent to kill. It is, however, urged by appellant that the indictment does not charge murder. The books contain various statements as to how an indictment should be drawn, and different authors divide it into different parts. Our statute (section 7632) defines it to be: "An accusation in writing presented by a grand jury to a competent court, charging a person with a public offense," and provides that it must contain: "1. The title of the action—specifying the name of the court and the names of the parties; and 2. A statement of the acts constituting the offense, in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended." If this is done, the defendant cannot complain. The order in which it is done is not one of the essential elements of the indictment. It is claimed by appellant that the averments in what is often designated as the "conclusions" of the indictment cannot be construed in connection with the allegations in the charging part. That portion of the indictment known as the "conclusions" is not necessary, and is placed there or not, as the taste of the pleader may dictate. We think, when it is used, it may reasonably be construed with the other portions of the indictment. This, we think, is the general understanding of grand juries. The

indictment, construed together, charges the crime of murder in the second degree, under the adjudications of this court, in *People v. O'Callaghan,* ante, p. 156, 9 Pac. 414; and we see no reason for changing that decision.

The other specifications of error urged by appellant are to the instructions of the court given, and to those requested and refused.  There were seven instructions asked by defendant and refused, to which refusal exceptions were taken.  Of these the fourth is disposed of by our ruling on the sufficiency of the indictment.  The third, sixth and seventh are based upon threats claimed to have been known to defendant, and to knowledge of the character of the parties Lyon and McKee, and to a certain assault alleged to have been made upon the witness Lyon upon a trial not connected with the assault and homicide set out in the indictment.  The bill of exceptions contains no evidence whatever as to these threats, or the character of the parties Lyon or McKee, or the assault upon the trial.  It does, however, state that it contains so much of the evidence as is necessary to explain the rulings and decisions of the court in the trial of the case.  It is well established that the instructions should be based upon the evidence in the case, and the presumption is in favor of the ruling of the court.  There appears in the record no evidence to justify these instructions, and we do not consider it necessary to consider them, for, if correct as abstract principles of law, they do not appear by the record to be founded on any evidence in the case.  (*People v. Cochran,* 61 Cal. 548; *People v. Smith,* 59 Cal. 365; *People v. Dick,* 32 Cal. 213.)

The first instruction asked by appellant is as follows: "If the jury believe from the evidence that, on the occasion that James McKee received his mortal wound, the defendant had reason to believe, and did believe, that McKee and Lyon were about to take the life of Caleb Davis, or to do him some great bodily harm, and that there was no other means to prevent it, he would be justified in killing McKee, even if it should be shown that he was mistaken in his belief."  The second instruction asked by the defendant and refused is as follows: "If the jury believe, from the evidence, that on the occasion that James McKee received his mortal wound, the defendant

had reason to believe, and did believe, that McKee and Lyon were about to take the life of Caleb Davis, or to do him some great bodily harm, and that he, the said defendant, was present and had the means and ability to prevent the same, he would have been criminally liable if he had not used every necessary means in his power to protect the life and person of the said Caleb Davis." These two instructions may properly be considered together. There is no pretense that the defendant was a peace officer in the discharge of his official duty at the time of the homicide. While it is stated in some authorities that a private citizen may, under some circumstances, interfere to prevent a felony, and if, in so doing, he kill the wrongdoer, the law will justify the homicide (1 Archibald s Criminal Pleading and Practice, 805; Wharton on Homicide, sec. 533; 2 Wharton's Criminal Law, 1039; 1 Russell on Crimes, *670; 1 East P. C. 58; 1 Hale's Pleas of the Crown, 484), yet it is argued that the one whom he seeks to protect must be an innocent party. A private citizen cannot thus interfere between two persons, both of whom are in the wrong, and slay one to save the other. The instructions should have been so drawn as to submit to the jury not merely the question of the necessity of killing McKee, but also as to whether Davis himself was an innocent party in the affray, and whether he had done all he could to avoid the encounter. As submitted to the court, the instructions were likely to limit the inquiry of the jury simply to the necessity of killing McKee to save Davis, while, had the other questions been submitted to the jury, they might have found that Davis was the wrongdoer, and that McKee should have been protected instead of Davis. We think these instructions rightly refused.

Appellant excepts to the first, fourth, and seventh instructions requested by the prosecution. The first is a quotation from our statute defining murder and manslaughter, with instruction to the jury to find the defendant guilty of one of those two offenses, or not guilty. We think it justified by the evidence. The fourth instruction is as follows: "The jury are instructed that, while the law requires, in order to constitute murder, that the killing shall be willful, deliberate, and premeditated, still it does not require that the willful intent,

deliberation, or premeditation shall exist for any length of time before the crime is committed. It is sufficient if there was a design or determination to kill distinctly formed in the mind at any moment before or at the time the pistol was fired; and in this case, if the jury believe, from the evidence, beyond a reasonable doubt, that the defendant feloniously shot and killed the deceased, as charged in the indictment, and that before, or at the time, the pistol shot was fired, the defendant had formed in his mind a willful, deliberate, and premeditated design or purpose to take the life of deceased, and that the shot was fired in pursuance of that design or purpose, and without any justifiable cause or legal excuse therefor, as explained in these instructions, then the jury should find the defendant guilty of murder in the second degree." The seventh instruction is as follows: "The jury are further instructed that if, without such provocation as is apparently sufficient to excite irresistible passion, a person shoots another, and by such shooting occasions death, although he had no previous malice or ill-will toward the person shot, yet he is presumed to have had such malice at the time of shooting, and the person shooting will be guilty of murder." The seventh instruction quoted is supported by Instructions to Juries, by Sackett, second edition, page 694, section 37, and by *Johnson v. Commonwealth,* 24 Pa. St. 387. It has been criticised as not containing the proper definition of deliberation and premeditation. In this case, however, the court instructed the jury to find only for murder in the second degree. The instruction undoubtedly at least defines malice aforethought, and would sustain a verdict of murder in the second degree. We are therefore of the opinion that, as applied to the case at bar, the defendant has no cause of complaint. (*Gardenheir v. State,* 6 Tex. 348; *People v. Nichol,* 34 Cal. 211; *People v. Ah Kong,* 49 Cal. 6; *People v. Siloera* 59 Cal. 592; *People v. Messersmith,* 61 Cal. 246.) The seventh instruction is sustained by Instructions to Juries, by Sackett, (second edition, page 694, section 37). It is criticised by appellant, on the ground that it does not except justifiable or excusable homicide. This instruction must be taken in connection with the others given, and although it might not contain the precise accuracy which the most critical pleader might desire, yet,

if taken as a whole, the charge is substantially correct, and could not mislead the jury. The judgment will not be disturbed. (*People v. Cleveland,* 49 Cal. 577; *People v. Clementshaw,* 59 Cal. 385; *People v. Salorse,* 62 Cal. 139; *People v. Ye Park,* 62 Cal. 204.)

The instructions carefully explain to the jury the statute affecting the rights of defendant, and the court sees no reasonable ground of complaint. Judgment affirmed.