STATE v. D. M. BRITTAIN, et. al.

*Indictment for Incest—Confession—Confidential Communication Between Husband and Wife—Evidence.*

1. The general rule that evidence competent against one only of several defendants is admissible with instruction by the court that it shall not be considered as against the other, is subject to the exception that a confidential communication between husband and wife cannot, on grounds of public policy, be so admitted as evidence.

2. Where a wife, on threats of her husband to leave her, confessed to having committed incest, such confession being a confidential communication is inadmissible and its subsequent repetition to a third party under similar circumstances, in the presence of the husband, is incompetent in the trial of an indictment against the wife and another for incest.

STATE *v.* BRITTAIN.

INDICTMENT for incest, tried before *Bryan, J.*, and a jury, at Fall Term, 1895, of CATAWBA Superior Court. The defendants were convicted and appealed. The facts appear in the opinion of Chief Justice FAIRCLOTH.

*The Attorney General*, for the State.

*Messrs. L. L. Witherspoon* and *Jones & Tillett*, for defendants (appellants).

FAIRCLOTH, C. J.: The defendants, father and daughter, are indicted for incest. This offence was not indictable at common law, but is so by statute, *Code*, Sections 1060 and 1061. The *feme* defendant was married to A. H. Williams on the 12th of November, 1893, at whose school she had been a pupil and was visited by him before marriage. At the time of the marriage she was visibly pregnant and her child was born on the 26th of February, 1894.

About one week after the marriage the husband urged his wife to accuse her father as the father of the child, and continued to worry her for a week, telling her finally, if she would say so, he would cease worrying her and stick to her for life, and that, if she did not, he would go to the State of Washington next day and leave her to sit alone. She at last said she would say "yes" to what he would say about it. In a week he took her to his father, and at night told her if she did not state to his step mother, Rosana Williams, what she had admitted to him, he would leave for Washington next day. He then took her to Rosanna, and sitting between them, said: "Now Brentie, you tell Rosanna what you told me about being guilty of your Pa." She then, in that condition, admitted she had been guilty with her Pa. After this they slept together as man and wife. After Rosanna had testified,

STATE v. BRITTAIN.

the *feme* defendant was examined and admitted that she made the confession under the influence and threats of her husband, but said it was not true, and denied her guilt as charged, and said her husband was the father of her child. On the trial Rosanna was examined by the State to prove this confession, when the defendants objected on the ground of incompetency by reason of the facts above stated. The court overruled the objection, stating that the confession was evidence against the *feme* defendant only. Defendants excepted. Rosanna then testified to the confession. Several other witnesses were examined and at the close of the evidence the defendants prayed for this instruction : "That from all the evidence offered in the case, in no aspect thereof is there sufficient evidence to convict." This was refused and that was error. After verdict "appeal by the defendants prayed and granted."

As a general rule, evidence competent against one defendant only, is admissible, with instruction by the court that it shall not be received as evidence against the other. To this general rule the confession in this case is an exception, and is so on the ground of public policy.

The relation of husband and wife is confidential, from unity of interest and sometimes unity of person as in case of a joint estate to them. The law requires and extorts this confidence and it will protect it. Communications between them cannot be exposed to public view. The interest of the home, the parties, the children and especially the peace and order of society forbid it. Lord Coke said "it hath been resolved by the justices that a wife cannot be produced either against or for her husband *quia sunt duae animae in corne una ;* and it might be a cause of implacable discord and dissension between the husband and wife and a means of great inconvenience." Co. Litt., 6 b.

117—50

It is true that the confession under consideration does not affect the husband in a legal sense, but it does affect her and it violates the principle of public policy above referred to.

The first confession was a confidential communication made under the influence of the husband and soon after the second confession was made at his instance and in his presence, to Rosanna, who was a competent witness, whilst the husband was not. We are to assume that the second was made under the same influence that produced the first confession. It being then incompetent against the *feme* defendant and incompetent against the male defendant, because it was not his confession, the evidence should have been withheld and excluded. We do not know nor undertake to consider the weight of evidence before a jury, but no reason appears why incompetent testimony should be heard by a jury.

When a confession is made through hope or fear subsequent confessions are presumed to proceed from the same influence, until the contrary be shown by clear proof and until then the latter confessions are not admissible evidence. *State* v. *Roberts*, 1 Dev., 259.

The principle of excluding such evidence is ably considered in the opinion in *State* v. *Jolly and Elizabeth Whitley*, 3 D. & B., 110, indicted for fornication and adultery. There, after a divorce was duly certified, the *feme* defendant and Jolly were put on trial and the divorced husband was offered to prove the defendant's adulterous intercourse while the marriage relation existed. It was held that he was incompetent to prove that or any other fact which occurred while the marriage subsisted.

When a person is charged with crime, his answer or his silence may be considered by the jury. The evidence of Dr. Ford does not fall within that rule, as he did not

charge the male defendant with any offence, but talked about reports and whiskey.

With the confession excluded, we have no difficulty in holding that the evidence as a whole was not of a character to go to the jury on a question of guilt or innocence. For the errors assigned there must be a new trial.

New Trial.

CLARK, J., (dissenting): It can not be controverted that communications between husband and wife, on grounds of public policy, can not be given in evidence and this incompetency can not be removed by waiver or by the subsequent divorce of the parties. But there was no offer here to give in such evidence. It was simply a confession of a crime made by a woman who happened at the time to be married, and was made to a third party, not as a transaction or communication made to her husband but as a substantive, independent confession. She did not state in her confession that she had repeated the substance or any part of it to her husband. It would have been incompetent to have shown that she had done so either to corroborate or contradict her, but the substantive independent confession was not rendered incompetent by the fact that perhaps she had also made it to her husband.

Nor was the bare fact that she made the confession in the presence of her husband and at his instance, he (not she) remarking that she had also told it to him, conclusive evidence of duress. There was at this time no evidence of threats or promises. His Honor by overruling the objection raised on that ground, found that there was no duress and his finding is not reviewable. *State* v. *Burgwyn*, 87 N. C., 572. Besides on the evidence, as it then stood, this ruling was correct. The remark of the husband that she had narrated the matter to him should have been ruled out if the defendants had asked that it be done, but they did

not.   If afterwards, when the wife was examined in her own behalf, she testified to a state of facts which tended to show duress, if true, his Honor should have been asked to pass upon the sufficiency of this subsequent evidence to show duress by a motion to strike out the confession and we can not hold that it should have been stricken out; certainly not in the absence of any ruling of the court below upon it and an exception taken.   The weight of the evidence was for the jury and can not affect the legal questions presented for review.