170 P.2d 425

**CLARK v. ALLOWAY et al.**

No. 7247.

Supreme Court of Idaho.

June 14, 1946.

E. G. Elliott, of Boise, for appellant.

Maurice H. Greene, Fred M. Taylor, and C. Stanley Skiles, all of Boise, for respondents.

BUDGE, Justice.

Appellant's complaint, filed in the District Court for Ada County, set forth two causes of action. The first seeks damages in the sum of $15,000 actual and $5,000 punitive damages, alleged to have been sustained by reason of the acts of respondents in maliciously and unlawfully procuring her arrest, September 3, 1944, on a charge of vagrancy. The second cause of action seeks to recover damages in the same amounts from respondents for having falsely imprisoned appellant after her arrest on said charge.

Respondents, in their answer, deny all the allegations of the complaint, except they admit they are police officers; that respondents Alloway and Sherman arrested plaintiff for the violation of sec. 4-1501, Boise City Code, 1936, of begging as a business; that a criminal complaint was filed against her on that charge by the Boise City Chief of Police; that she was held in custody upon said charge, which was subsequently dismissed by the police judge on motion of the city attorney.

The cause was tried to the court and jury. At the close of all the evidence appellant moved to dismiss the complaint as against defendant Gunderson, which motion was granted. The jury returned a verdict in favor of the remaining defendants on both causes of action. Judgment was entered on the verdict, hence this appeal.

The testimony is voluminous, consisting of 434 pages. It might be here observed that there is a direct conflict upon every material issue of fact.

The primary contention of appellant upon which she bases her right of recovery is that at the time of her arrest she was, and had been for a considerable period of time, engaged as an evangelist pastor and missionary for various religious and charitable organizations; that her solicitation of funds was for these organizations; that she was not engaged in begging as a business; that her arrest and imprisonment on the charge of begging as a business was malicious and without probable cause.

On the other hand, respondents have bottomed their defense upon the ground that the evidence clearly establishes the fact that appellant was not engaged in

religious or charitable work in soliciting funds as claimed by her, but was engaged in begging as a business in violation of sec. 4-1501, Boise City Code; that probable cause existed for her arrest at the time she was taken into custody, absence of malice and, as to the second cause of action, no wrongful or unlawful detention.

In limine, actions for malicious prosecution are not favored in law, hence have been hedged about by limitations more stringent than in the case of almost any other act causing damage to another. In order to recover in such an action the plaintiff must allege and prove (1) that there was a prosecution; (2) that it terminated in favor of plaintiff; (3) that the defendants were prosecutors; (4) that they were actuated by malice; (5) that there was want of probable cause; and (6) the amount of damages that plaintiff has sustained. Russell v. Chamberlain, 12 Idaho 299, 85 P. 926, 9 Ann.Cas. 1173, and cases therein cited; Luther v. First Bank of Troy, 64 Idaho 416, at page 421, 133 P.2d 717.

"As it is essential that the plaintiff in his complaint affirmatively allege all the facts necessary to support his action, it follows that he must assume the burden of proof in respect to each of these allegations, and by his evidence establish to the satisfaction of the court and jury that he has been prosecuted by the defendant, that the prosecution has terminated in his favor, that it was malicious, and without probable cause;

and if by his evidence he does not make out a prima facie case upon all of these issues, he must fail." Ross v. Hixon, 46 Kan. 550, 26 P. 955, 12 L.R.A. 760, 26 Am. St.Rep. 123, Note at page 153.

"To sustain an action for malicious prosecution, there must be a concurrence of malice and want of probable cause. Neither, however clearly established, will support an action in the absence of the other." Ross v. Hixon, supra, 26 Am.St. Rep., Note, page 149.

Numerous definitions of probable cause have been given. A definition sufficiently exact to meet satisfactorily every possible test would be difficult, if not impossible, to furnish. It may be nearly accurate to say that probable cause consists of a belief in the charge or facts alleged, based on sufficient circumstances to reasonably induce such belief in a person of ordinary prudence in the same situation. Boeger v. Langenberg, 97 Mo. 390, 11 S.W. 223, 10 Am.St.Rep. 322.

"Probable cause as is applicable to this action is (the existence of such facts or circumstances as would excite the belief of a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted.)" Luther v. First Bank of Troy, 64 Idaho 416, 420, 133 P.2d 717, 719.

The rule seems to be well established that where the evidence bearing upon the question of probable cause is conflict-

ing, it is the province of the jury to determine which of the witnesses speak the truth. Ross v. Hixon, supra, 126 Am.St. Rep., Note, page 141.

The jury by its general verdict found probable cause for the arrest of plaintiff, and absence of malice. The evidence is sufficient, though contradictory, to support the verdict.

"False imprisonment is the unlawful restraint by one person of the physical liberty of another," or more exactly, "the direct restraint by one person of the physical liberty of another without adequate legal justification" or without probable cause. (11 R.C.L. 791.) The jury found upon conflicting evidence there was probable cause for plaintiff's arrest and detention. The rule is well established in this jurisdiction that where the evidence is conflicting, and there is substantial evidence to support the verdict, it will not be disturbed on appeal. Frost & Co. v. Coeur d'Alene Mines Corporation, 63 Idaho 20, at page 28, 115 P.2d 928.

We will now consider appellant's assignments of error alleged to have occurred during the trial to determine whether or not the trial judge committed reversible error.

Appellant has assigned 18 specifications of error. We will direct our attention to such of them as we consider material, but not in the order in which stated in the brief.

Assignments numbered 7 to 11, inclusive, are predicated upon the proposition that the court erred in permitting respondents to testify, over objection, as to whether or not they were influenced by malice in instituting proceedings against appellant. They all testified, in effect, that at no time did they entertain malice or ill will toward appellant or seek to injure her. The burden was on appellant to establish each and every allegation of her complaint, that is, both lack of probable cause and malice, such proof in an action of this character is indispensable. (38 C. J. § 146, p. 475.)

A person who caused a prosecution against another, and who was sued for malicious prosecution, is entitled to testify, in the action against him, as to whether or not he was influenced by malice in instituting the prosecution. Autry v. Floyd, 127 N.C. 186, 37 S.E. 208; Coleman v. Heurich, 13 D.C. 189, 2 Mackey 189; Spalding v. Lowe, 56 Mich. 366, 23 N.W. 46; Turner v. O'Brien, 5 Neb. 542; McCormack v. Perry, 47 Hun [N.Y.], 71; Greer v. Whitfield, 4 Lea [Tenn.] 85; Sherburne v. Rodman, 51 Wis. 474, 8 N.W. 414. See, also, City of Los Angeles v. McCollum, 156 Cal. 148, 103 P. 914, 23 L.R.A.,N.S., 378, Note at page 393; Fleet v. Tichenor, 156 Cal. 343, 104 P. 458, 34 L.R.A.,N.S., 323; 34 Am.Jur. § 138, p. 783.

It is urged by appellant that since the offense was a misdemeanor only, under the provisions of sec. 19-607, I.C.A., the

arrest was unlawful. Said section provides, inter alia.: "If it [offense] is a misdemeanor the arrest can not be made at night, unless upon the direction of the magistrate, indorsed upon the warrant."

Section 19-603, I.C.A., provides:

"A peace officer may make an arrest in obedience to a warrant delivered to him, or may, without a warrant, arrest a person:

"1. For a public offense committed or attempted in his presence. * * *"

The offense with which appellant was charged was committed in the presence of the arresting officer as established by the evidence and found by the jury, and was therefore lawful. State v. Hart, 66 Idaho 217, 157 P.2d 72.

Appellant strenuously urges the court erred in giving and refusing to give certain instructions. We have carefully examined all the instructions given, and instructions offered and refused. The instructions given, when considered as a whole, fully and fairly covered the issues and contain no prejudicial error.

"Where * * * the entire charge, will be considered together, and, if it fairly and correctly presents the law bearing upon the issues tried, the appellate court will not disturb the judgment." Territory v. Evans, 2 Idaho 425, 17 P. 139; State v. Schieler, 4 Idaho 120, 37 P. 272; People v. Chun Heong, 86 Cal. 329, 24 P. 1021; People v. Etting, 99 Cal. 577, 34 P. 237.

In specification of error No. 1 appellant complains the court erred in sustaining an objection to plaintiff's counsel questioning jurors as to whether or not they were stockholders in any insurance company or organization which had for its business the insuring of persons against damages for false imprisonment or malicious prosecution.

We do not find any reference to the above assignment in appellant's argument in her brief nor in her Points and Authorities. This court has repeatedly refused to consider assignments of error that are not discussed nor briefed. Malcolm v. Hanmer, 64 Idaho 66, at page 82, 127 P.2d 331, and cases therein cited. However, it might be here observed the action of the trial court in permitting or refusing the asking of questions relating to insurance companies is a matter within the court's discretion. Unless abused, that discretion will not be interfered with on appeal. Olguin v. Thygesen, 47 N.M. 377, 143 P.2d 585; Beasley v. Bond, 173 Okl. 355, 48 P.2d 299; Berry v. Park, 185 Okl. 118, 90 P.2d 425; Fritchman v. Chitwood Battery Co., 134 Kan. 727, 8 P.2d 368.

The court did not err, as urged in assignment No. 5, in denying the motion to strike all the testimony of the witness Ross Hickman. It was admissible, first, for the purpose of impeaching the plaintiff on material matters; second, it went to the question of probable cause,

**40**

and third, it was not prejudicial error, for the reason that evidence of similar import and to the same effect was admitted without objection. State v. Johnston, 62 Idaho 601, at page 611, 113 P.2d 809; State v. Reding, 52 Idaho 260, at page 266, 13 P.2d 253.

Hickman testified that appellant used a tambourine in making her solicitations upon numerous occasions when the Salvation Army was holding its street meetings. Appellant testified that she had never used a tambourine in soliciting contributions. It was admissible upon the issue of probable cause, for the purpose of showing whether or not the police officers had cause to believe that Mrs. Clark's solicitations were for business purposes rather than religious or charitable purposes. Hickman, prior to Mrs. Clark's arrest, had complained to the officers that appellant was soliciting contributions at the times and in the manner above stated. Statements made to an officer by a third person are admissible upon the ground of probable cause. Carpenter v. Sibley, 15 Cal.App. 589, 119 P. 391; Selvester v. Kennedy, 137 Cal.App. 250, 30 P.2d 63.

Assignment of error No. 2 is predicated upon the action of the court in sustaining an objection, on redirect examination of appellant, as to what the city attorney said to her with reference to certain exhibits. The objection was properly sustained for the reason that it was hearsay as to defendants.

In assignment No. 3 it is urged the court erred in striking certain testimony elicited from Mr. Elliott as to what happened in the police court on the charge against appellant. Assignment No. 4 is to the same effect. The court committed no error in its rulings on these matters.

The criminal proceeding in the police court was never tried on the merits, but was voluntarily dismissed. The rule applicable is stated in 34 Am.Jur. p. 742, § 62, as follows:

"According to the weight of authority, an abandonment of the prosecution by the complaining witness, a discontinuance at the instance of the prosecuting attorney, a dismissal by the magistrate or court without a hearing of all the evidence, and other similar terminations of a criminal proceeding whereon an action of malicious prosecution has been based are not regarded as constituting evidence of want of probable cause, and they raise no presumption thereof. * * *" Fowler v. Ruebelmann, 65 Idaho 231, 142 P.2d 594, 596.

There was no prejudicial error, as contended in assignment No. 6, in the action of the court in sustaining the objection to the question asked witness Hickman, namely, "Do you feel that the information you had received from these various sources was sufficient information to justify you in signing a complaint against Mrs. Clark?" The witness never signed a complaint and, at most, it would be but a conclusion.

Assignment of error No. 12 raises the question of whether or not the court erred in overruling appellant's objection to the introduction of defendants' exhibit "G", a certified copy of Ordinance 1354 of Boise City, defining and providing the punishment for the crime of vagrancy.

Appellant's objection is bottomed upon the proposition that Exhibit "G" "is incompetent, irrelevant and immaterial, and not in conformity with the state law covering this misdemeanor and is in conflict with the state statute and is, therefore, no justification for these defendants in this case, and not admissible in evidence."

A comparison of sec. 17-4601, I.C.A., and Ordinance 1354, Exhibit "G", discloses they differ in the following particulars: The ordinance deletes the word "healthy"; second, the ordinance fixes the punishment at a fine of "not less than Ten nor more than One Hundred Dollars", while the statute fixes the punishment as "imprisonment in the county jail not exceeding ninety days."

It is contended by appellant that these are material variances and therefore fatal to the ordinance. Furthermore, it is contended the ordinance is a local and special law for the punishment of crimes and misdemeanors, which the Legislature may not pass, nor delegate to a municipality the authority to pass, and it denies equal protection of the laws, and for these reasons is void and unconstitutional.

With this contention we are not in accord. Boise is a Special Charter city. Art. 21, sec. 2 of the Constitution provides: "All laws now in force in the Territory of Idaho, which are not repugnant to this Constitution, shall remain in force until they expire of their own limitation or be altered or repealed by the legislature." Wiggin v. City of Lewiston, 8 Idaho 527, 69 P. 286; Butler v. City of Lewiston, 11 Idaho 393, 83 P. 234; Boise City Nat. Bank v. Boise City, 15 Idaho 792, 100 P. 93; Kessler v. Fritchman, 21 Idaho 30, 119 P. 692; Hoffer v. City of Lewiston, 59 Idaho 538, 85 P.2d 238.

Section 2, art. 12 of the Constitution provides: "Any county or incorporated city or town may make and enforce, within its limits, all such local police, sanitary and other regulations as are not in conflict with its character or with the general laws."

Prior to statehood Boise City Charter (sec. 11, Act of January 11, 1866) authorized the Mayor and Council "to provide for the support, restraint and employment of vagrants and paupers." October 6, 1882, the Mayor and Council enacted Ordinance No. 58 defining the crime of vagrancy. This ordinance was amended March 10, 1897, by Ordinance No. 200; it was amended again by Ordinance 1144, passed October 28, 1914. Prior to the last amendment the word "healthy" was included in the ordinance. Likewise, prior to the 1914

42

amendment the charter provision relating to vagrancy was broadened by sec. 37, House Bill 64, 1901 Sess.Laws, p. 109. That amendment, now sec. 42(13) of the Charter, as amended by Chap. 215, § 6, 1939 Sess.Laws, reads, in part, as follows: "To define what shall constitute vagrancy, and provide for the support, restraint, punishment and employment of vagrants and paupers; * * *." Under the statute above cited the Mayor and Council were authorized to define vagrancy and to fix the punishment therefor.

In City of Seattle v. Chin Let, 19 Wash. 38, 52 P. 324, 325, the following language is used: "We think that the city had authority to pass the ordinance in question, and that it was within the powers conferred by the charter and general law of the state. The reasoning of the respondent would lead to the conclusion that the council, in drafting ordinances defining offenses committed within the limit of the city, should be restricted to the particular offenses created by the general laws of the state, and also to the particular words and terms used by the legislature in defining such offenses. We think the right of the city to enact the ordinance in question was in no wise affected by the existence of section 139, supra."

The fact that the ordinance in question is somewhat broader in scope than the general statute, and provides a different penalty, it does not necessarily follow that the ordinance is unconstitutional.

In State v. Preston, 4 Idaho 215, 38 P. 694, this court said, quoting from the second syllabus: "Municipal corporations may pass ordinances for the punishment of and may punish for the same acts as are punishable under the Penal Code, when authorized so to do by the law under which such towns and villages are organized."

Quoting from the same case, 4 Idaho at page 220, 38 P. at page 695, from Cooley's Constitutional Limitations, 6th ed., 239: " 'Indeed, an act may be a penal offense under the laws of the state, and further penalties under proper legislative authorities be imposed for its commission by municipal by-laws, and the enforcement of the one would not preclude the enforcement of the other.' * * * 'And where the terms of the incorporating act clearly include the power, such result would appear to be unquestionable.' The legislature of this state has conferred on towns and villages, under proper ordinances or by-laws, authority to punish vagrants and persons found without visible means of support or some legitimate business, and the ordinance in question is clearly within the authority so conferred."

In Mann v. Scott, 180 Cal. 550, 182 P. 281, 283, the court said: "Where the Legislature has assumed to regulate a given course of conduct by prohibitory enactments, a municipality with subordinate power to act in the matter may make such new and additional regulations in aid and furtherance of the purpose of the general

law as may seem fit and appropriate to the necessities of the particular locality, and which are not in themselves unreasonable." 19 R.C.L. sec. 110, pp. 803–4; State v. Quong, 8 Idaho 191, 67 P. 491; Ex parte Hoffman, 155 Cal. 114, 99 P. 517, 132 Am. St.Rep. 75; Society Theater v. City of Seattle, 118 Wash. 258, 203 P. 21; Portnoy v. Superior Court Etc., Cal.App., 116 P.2d 804; Natural Milk P. Ass'n v. City and County of San Francisco, 20 Cal.2d 101, 124 P.2d 25.

Finding no prejudicial error, the judgment must be affirmed, and it is so ordered. Costs to respondents.

HOLDEN and MILLER, JJ., and BUCKNER, D. J., concur.

AILSHIE, C. J. (dissenting).

I am unable to agree to an affirmance of the judgment in this case. I think the ordinance in question (No. 1354), discussed in the majority opinion, is in conflict with the constitution and laws of the state.

I also call attention to the fact that exhibit "G",[1] to which reference is made in the majority opinion, does not seem to correspond with section 4-1501, Boise City Code 1936 (printed and certified) dealing with the same subject.

---

[1] "Ordinance No. 1354
By the Council
An ordinance amending Ordinance No. 1144 passed by the council and approved by the Mayor on the 28th day of October, 1914 defining vagrancy and providing a penalty for the violation thereof.
Be it ordained by the Mayor and City Council of Boise City, Idaho:
Section 1. That Ordinance No. 1144, passed by the Council and approved by the Mayor of Boise City, Idaho, on the 28th day of October, 1914, be, and the same is hereby amended to read as follows:
Section 2. Every person without visible means of living, who has the physical ability to work, and who does not for the space of ten days seek employment, nor labor when employment is offered him; every beggar who solicits alms as a business; every person who roams about from place to place without any lawful business; every idle or dissolute person, or associate of known thieves, who wanders about the streets at late or unusual hours of the night, or who lodges in a barn, shed, shop, outhouse, or place other than such as is kept for lodging purposes, without the permission of the owner or party entitled to the possession thereof; every lewd and dissolute person, who lives in and about houses of ill-fame, or solicits for the purpose of prostitution or lewdness upon the streets, alleys or public places of the city, and every common prostitute and common drunkard, is a vagrant, and upon conviction in the Police Court of said city shall be punished by a fine of not less than Ten nor more than One Hundred Dollars.
Section 3. This ordinance shall be in force and take effect ten days after its passage, approval and publication.
Passed the Council of Boise City, Idaho, this 9th day of May, 1922.
Approved by the Mayor of Boise City, Idaho, this 9th day of May, 1922.
Approved. Eugene B. Sherman, Mayor. Attest:
Angela Hopper
Angela Hopper, City Clerk".